UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

- - -

UNITED STATES OF AMERICA,     .   Case No. 5:21-CR-00077-1
                              .
            Plaintiff,        .
                              .   Lexington, Kentucky
        - v -                 .
                              .   Friday, May 6, 2022
JAMES GARFIELD CHARLES,       .   9:00 a.m.
                              .
            Defendant.        .
                          - - -

TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT COURT JUDGE

- - -

For the United States:    GARY TODD BRADBURY, ESQ.
                          Assistant U.S. Attorney
                          United States Attorney's Office
                          260 West Vine Street, Suite 300
                          Lexington, Kentucky  40507

For the Defendant:        ANDREW LOUIS SPARKS, ESQ.
                          Dickinson Wright, PLLC
                          300 West Vine Street, Suite 1700
                          Lexington, Kentucky  40507

Court Reporter:           LINDA S. MULLEN, RDR, CRR
                          Official Court Reporter
                          101 Barr Street
                          Lexington, Kentucky  40507

Proceedings recorded by mechanical stenography, transcript
produced by computer.

(Proceedings in open court, May 6, 2022, 9:00 a.m.)

THE COURT: Thank you.

Madam Clerk, would you call the matter scheduled for 9:00, please.

THE CLERK: Yes, Your Honor. Lexington Criminal Action Number 21-77, United States of America versus James Garfield Charles, called for sentencing.

THE COURT: Thank you.

Would counsel state their appearances, please.

Mr. Bradbury.

MR. BRADBURY: Good morning, Your Honor. Todd Bradbury for the United States.

THE COURT: Mr. Sparks.

MR. SPARKS: Good morning, Your Honor. Andrew Sparks for Mr. Charles, who is seated beside me.

THE COURT: Thank you. This matter is scheduled for a sentencing hearing this morning. A hearing on some of the objections or on all of the objections, excuse me, was held earlier this weeks.

Before we proceed, I do want to confirm that Mr. Charles has had the opportunity to review his presentence report and also to discuss the report with his attorney to his satisfaction; is that correct, Mr. Charles?

THE DEFENDANT: Yeah.

THE COURT: All right.

THE DEFENDANT: Yes.

THE COURT: Your presentence report will be filed in the record under seal pursuant to the Federal Rules of Criminal Procedure. It is available to the parties but not for the general public to review.

Previously, I, as indicated, addressed objections filed by the defendant, made findings with regard to those objections. Those findings, together with the facts set forth in the presentence report not inconsistent with the Court's findings will be adopted.

I will review the guideline calculations in this particular case. They will be modified based upon findings that I made with regard to paragraph 24 of the presentence report, so I will review that with the parties at this time.

The offense level calculations in the presentence report begin at paragraph 17. The 2021 edition of the guideline manual has been used. All of the counts group except for Count 6. So the count group 1 has a base offense level of 38 based upon drug quantity attributed to this defendant.

Paragraph 28 refers to obstruction of justice. But in fact, the correct section of the guidelines under 3C1.2 is reckless endangerment during flight, and previously I sustained the defendant's objection to that two-level increase. That has the effect of creating an adjusted offense level of 38 and a total offense level of that number as well.

By statute, Count 6 requires a minimum term of incarceration of five years, which would be consecutive to any period of incarceration that will be imposed with regard to the counts listed in count group 1.

Information regarding the defendant's criminal history is contained in part B of the report. Paragraph 42 indicates that he has a total of four criminal history points, that places the defendant in Criminal History Category III for calculations of the guideline range that is set forth in paragraph 68 of the report.

The statutory provisions, and there are certain mandatory minimum provisions for a number of counts, those statutory provisions are contained in paragraph 66.

Counts 1 and 2, there is a minimum term of ten years' incarceration with a maximum of life.

Count 3 is a minimum term of five years, maximum of 40 years.

Count 4, the maximum term is 20 years.

Count 6, the minimum term, of course, is five years and that would be consecutive.

And then Count 7, the maximum term of incarceration is ten years.

The guideline range set forth in paragraph 68 will be adjusted based upon the Court's previous finding.

For a total offense level of 38, the guideline range for

an individual in Criminal History Category III would be a range of 292 to 365 months. That would be as to Counts 1 and 2.

The statutory maximum for Count 3 is 40 years and is not affected by that revision.

However, the statutory maximum for Count 4 is 240 months.

And for Count 7, would be 120 months.

And that is the range for those particular counts.

The fine range in this case remains as set forth in paragraph 78, $50,000 to $26 million. Those are the calculations that are adopted based upon the Court's previous findings on the defendant's objections in this case, and objection number 1 set forth in the addendum to the report.

The Court also adjusted the total quantity of drugs by reducing the 15 pounds of methamphetamine attributed to the defendant's relevant conduct down to five, but that does not affect the base offense level in the case. Total amount still remains in excess of 90,000 kilograms.

This was a superceding indictment that proceeded to trial. Is the United States moving to dismiss the original indictment at this time?

MR. BRADBURY: We do, Your Honor.

THE COURT: That motion will be sustained and that will be effective upon entry of the judgment in this case.

If there are no other motions to be taken up, we'll proceed to allocution. Mr. Sparks, I'll turn to you first.

Also, Mr. Charles, if you would like to make a statement to the Court, you may do so as well.

Mr. Sparks.

MR. SPARKS: Thank you, Your Honor. This is a serious offense. Your Honor sat through a multi-day trial and then a couple of hours of testimony. I know you're very familiar with the facts so I'm not going to go into those.

I know you're also very familiar with the appropriate wall, the advisory guideline range so, I'm not going to delve into that, that is in my sentencing memo for the record.

Judge, as you noted, the guideline range here is a 38 with a Criminal History Category of III, which is 292 to 365 months, followed by a minimum of 60 months. There is no other way to say it, other than that is a tremendous amount of time for a very serious offense.

What I want to focus on is a couple of things in the 3553 factors.

Before I do that, though, I would note we did have the objection about the amount and the quantity, and I know the Court departed downward. Even with our objection, it was still going to be a base offense level of 38, but it is very close to a base offense level of 36, which is 235 to 293 months. So at this level of the guidelines, obviously, these two-level enhancements just make a tremendous amount of difference as to the sentence.

Regarding the appropriate punishment here, the seriousness, he is going to get a multi-decade sentence, we realize that. That is a serious -- that appropriately reflects the seriousness of this offense.

I think it deters generally and specifically. I don't think there's anybody out there that, if you hear you're going to get 20-plus years in prison, is going to think that is not something to seriously think about and deter your conduct. I think if that doesn't deter you, it's very difficult to imagine what will.

As far as for Mr. Charles, one of the things I want to note, and it's in 3553 but not in the guidelines, is his age. He is 52 years old. Right now, if he gets a 292 plus 60 months, he will be in his 80s when he gets out. And, Judge, my argument essentially is you can do all the necessary factors under your 3555 analysis, without holding him in prison for the next 30 years until he's in his 80s.

I did some look on the sentencing guidelines. There wasn't a whole lot of information about age on the website. But over the age of 60, there are far fewer offenders. I came up with 1900 by looking at the website.

My point being, when he is in his mid 70s to 80s, there is no reason for him to be taking a bed in a facility when he can be out. So I think the public will be adequately protected by a sentence that carries him into his 70s. There's no reason to

carry him into his 80s. The public will be protected. That's adequate deterrence.

I would note similar sentences. And I won't go into this any further, but Mr. Sloan, a co-conspirator, is going to be sentenced to what is probably going to be a de minimus amount of time in state court. Mr. Cloyd, of course Your Honor will decide what he gets, and Mr. Vassor.

I would note as well one of the factors about needed medical care. Mr. Charles is in poor health, that's listed in the presentence report. He has a number of health issues. Most notable right now is when he broke his hip when he was -- after he was confined at the Fayette County Detention Center.

We would request -- I know Your Honor doesn't have the authority to say where he will go, but we would request he be sent to a medical center, is properly evaluated by the Bureau of Prisons to make sure that his medical needs are met. I know he is in tremendous pain even this morning from his hip condition.

We would also request someplace as close to home as possible for his designation.

THE COURT: Is that in Los Angeles or is that in Kentucky?

MR. SPARKS: Kentucky, Your Honor.

Judge, based upon those factors, what I would request here is a sentence that is below the advisory range of 292 to 365. I would request a sentence of 240 months followed by the

five-year sentence, which would be a total of 300 months' imprisonment.

I believe that is an incredibly lengthy sentence. It is less than the guideline range, but I think it adequately addresses all of the factors. Thank you.

THE COURT: All right. Thank you.

Mr. Charles, would you like to add anything to what your attorney has said on your behalf?

THE DEFENDANT: No, sir.

THE COURT: All right. Thank you.

Mr. Bradbury.

MR. BRADBURY: Yes, Your Honor. The offense, as the defense concedes, is quite serious. We have more than 10 pounds of actual meth seized. The Court, of course, presided over the trial and is familiar with the facts so I'll just highlight a few.

The methamphetamine, most of the samples were 98 or 100 percent pure. More than 10 pounds of actual meth. More than one-quarter kilogram of heroin, with 319 grams, a particularly lethal substance.

20 grams of fentanyl. And, of course, as the Court recognizes, 20 grams pales in comparison to 10.3 grams, but about a tenth of a gram is lethal. So 20 grams of fentanyl is nothing insignificant in the way of overdoses that have occurred in this district.

We have 240 grams, about one-quarter kilogram of cocaine seized, 14 firearms. So there is certainly a need for a lengthy sentence based on the seriousness of the offense and a need for a just punishment.

Mr. Charles' criminal history, he also had a trafficking conviction in 1986. Dated, but the presentence report and the overall case proof would suggest that Mr. Charles has simply supported most of his life by selling drugs.

There's no proof, in fact the presentence report indicates he hasn't worked since 2006. Yet during the execution of the search warrant at his residence at Rocky Hill Terrace, officers recovered $25,000 in U.S. currency. So clearly he's been supporting himself and/or others by trafficking in narcotics for quite a long period of time.

He has crimes of violence in his history. He has a conviction for battery in 1989 that was a misdemeanor. But also a felony offense, felony conviction for assault with a deadly weapon, 1991, he got three years in prison. That was a carjacking essentially, carjacking/robbery.

He has multiple firearms offenses. Three separate times he's been convicted of being a felon in possession of a firearm. 1993, 1994, 2007 all with relatively short prison terms, 16 months or two years. There was certainly no deterrent effect as to firearms because we then, you know, in this case seized 14 firearms from his residence, including not

only the charge for being a felon in possession, but the 924(c) for possessing a firearm in furtherance of the crimes.

He's a danger to the community as well based on DUIs. He has at least three prior convictions from 1990, 2007, 2013. The Court heard the testimony on Wednesday that Mr. Charles appeared to be intoxicated, smelled of alcohol during the traffic stop on Richmond Road. He was charged with a DUI. Of course the state deferred to us for prosecution and didn't pursue the DUI, but there is certainly a factual basis to support that he was driving drunk that day.

We have a bevy of offenses in the presentence report from paragraphs 45 to 54 with unknown dispositions of pretty serious charges, everything from DUIs to trafficking offenses. And I know part of the issue is it's ridiculously difficult to get records from Los Angeles and from many parts of California. We did get all of the felony convictions that we knew of, which included five separate felony convictions for Mr. Charles.

There is a need to promote respect for the law. Not only his criminal history reflects that lack of respect, but as the Court saw on Wednesday with the video of the traffic stop, you know, Mr. Charles didn't yield to the police commands to stop his vehicle. He continued to roll.

Once he's out of the vehicle in, you know, what could have been an extremely dangerous situation, he's blaming the police, oh, you hit me. They tried to ask him simple questions, and

frankly, in a very polite manner. I was, you know, quite pleased with the officers who, you know, went from a highly, potentially volatile situation to being quite cordial to Mr. Charles and say, could you please turn around and talk to us? And you saw him turning around and refusing to even engage with them.

Trooper Gabriel says, you know, why are you acting like a five year old? Just look at me, I'm trying to ask you a simple question. So you see the lack of respect that he has for law enforcement.

The guideline range is properly calculated for Counts 1 and 2 at 292 at 365 months. I would suggest that a mid-range sentence of 336 months, which is 28 years, for Counts 1 and 2, would be appropriate.

The 60 months consecutive, Count 6, would make a total term of 33 years or 396 months. It certainly is a lengthy time in prison, but it's warranted based on all of the 3553(a) factors, the need to protect the public, the need for deterrence, the seriousness of the offense. All of those factors support that lengthy sentence.

Thank you.

THE COURT: Thank you. Well, in this particular case, of course there are some mandatory minimums that do apply to certain counts, but the guideline range for Counts 1 and 2 would be greatly in excess of mandatory minimums. I do note

that the sentencing guidelines are not binding on the Court. While mandatory minimum penalties would be, the guidelines are not.

And the Court does consider a number of factors in determining what would be an appropriate sentence. The attorneys have reflected on several of those factors that are listed in Title 18, Section 3553(a). They do include, of course, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law, and provide a just punishment for the offense or offenses.

The Court also considers, of course, the deterrent effect that the sentence would have, both specific deterrence as well as general deterrence.

The Court considers issues of rehabilitation, and that would also include issues of medical treatment, whether medical treatment would be necessary, or treatment for any substance abuse issues or addiction issues.

The Court considers all these other factors that are listed, including the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. And of course, that issue is important in a case in which the guideline range is a lengthy range.

That particular factor addresses nationwide sentencing disparities, but it does not prohibit the Court from looking at or comparing defendants within a particular case or even within the district.

In this particular matter, of course the attorneys, as I indicated, they have commented upon several of these factors. Both sides do acknowledge the seriousness of the offense based upon the type of drugs and the quantity of drugs to which the defendant is held responsible.

In this particular case, of course the defendant proceeded to trial, which was certainly his right, but at no point has he ever accepted responsibility for his actions or indicated remorse for his actions.

And as the United States indicates, it does appear that this defendant has spent a good part of his adult life engaging in drug trafficking activities. There's no indication of other substantive work by the defendant.

There is no indication that he has substance abuse issues, although there is some substance use reflected in the presentence report. And he does have some physical ailments or injuries that he suffered, including of course the hip injury that was discussed, but there are some other physical impairments. And as the defendant, of course, does get older, it is anticipated that individuals do develop these specific conditions.

However, in reviewing information from the Bureau of Prisons, it does appear that the BOP can address all of those issues and can do so adequately. I do consider those issues because they are part of the defendant's history and characteristics.

Now, the parties have also mentioned age. Age is an important factor when we do consider recidivism issues. The older a person gets, the less likely that that person is to re-engage in criminal conduct or be arrested or have violations of supervised release. But that does not necessarily mean that an individual gets a discount because he's either middle-aged or older. And in this particular case, the Court does impose what would be an appropriate sentence taking all of those factors into account.

And while this defendant does have significant criminal history, many of his convictions are not included in the calculation because of the age, but it's an indication that he has been engaged in criminal conduct for a lengthy period of time and has some very serious convictions that are outlined in that section of the report, part B.

One could argue that the criminal history section does not adequately reflect recidivism issues based upon number of convictions not being counted. But I don't consider that, that's not an issue that's before the Court with underrepresented criminal history. And because the defendant

will be receiving a lengthy sentence, when he does become eligible for release, at his age at that point, the projected age, then that does discount somewhat the criminal history information in the report.

As I indicated, and I'll state again, there is a report from the sentencing commission from 2016 that does consider recidivism issues. And of course criminal history, while that's a very important factor, is probably the best indicator of recidivism.

Age is inversely related to that. The older a person gets, the less likely the individual person is to engage in criminal conduct. So I do consider that information, but I do not increase the ultimate penalty in this case based upon underrepresented criminal history, and I do take age into account in determining the ultimate sentence for the reason that has been outlined.

Counsel for the defendant does acknowledge, again, the seriousness of the offense based upon the drugs involved in the case. The Court does consider the -- not only the quantity attributed to the defendant but the quality or the potency of the particular drugs in issue.

I have previously spoken about not only the quality of methamphetamine, the purity level, which is reflected in the presentence report, but also the dangerousness of other substances, which would include both heroin as well as

fentanyl.

The United States is correct that while there is substantially less fentanyl involved, it does not take a lot of fentanyl to create injury and death as this Court has seen on too many occasions recently.

In this particular case, this defendant did engage himself with other individuals in a conspiracy to distribute these substances.

Also, one thing that's not reflected, at least not at this time, has been the large amount of drugs and weapons in a home where children were located. It does indicate a further lack of respect that this defendant has for others. He has demonstrated a lack of respect for the law through his conduct as set forth on the video that was shown. Again, at no point has he ever accepted responsibility or shown any remorse whatsoever for his criminal conduct.

Of course he doesn't receive acceptance credit because he proceeded to trial, but he's certainly not entitled to any acceptance credit because he's never shown that he has accepted responsibility in this particular matter.

The criminal history section does, I believe, adequately summarize his history and his character. Those are negative factors by and large.

He does have medical issues, which again I will address and will make a recommendation for appropriate treatment. And

if he does qualify for treatment at a medical facility, then the Bureau of Prisons can certainly place him at such a facility.

The Bureau of Prisons also has an obligation under Section 601 of the First Step Act with regard to placement. And while the Court can make recommendations to the Bureau of Prisons, and I will recommend that the BOP comply with that section of the First Step Act, I'll not make further recommendations with respect to placement. I don't believe it would be necessary in this particular case.

The sentence that will be imposed in this matter will reflect not only specific deterrence for this defendant but also general deterrence. And one could certainly argue that by reducing the sentence to the term that has been advocated by counsel for the defendant, that it would be -- it may be sufficient specific deterrence for Mr. Charles, I do not believe it would be sufficient general deterrence for others that might be inclined to engage in similar conduct.

The Court sees way too many individuals, some much older than this defendant, that are willing to engage in this type of conduct for a profit, and they are willing to take the risk that, if they are caught, they will face a significant period of incarceration. I have a number of such individuals that are presently before the Court on the docket.

So while I would hope, and one would think that perhaps

these lengthy periods of incarceration greater than 20 months would be sufficient general deterrence, history has not shown that to be the case.

In this particular case, when I consider all these factors, all the factors of 3553, including the need to avoid unwarranted sentencing disparities among individuals with similar records who have been found guilty of similar conduct, I do come to the conclusion that a guideline sentence is both necessary and appropriate in this particular case.

Then looking within the guidelines and looking within the guideline range as to what would be an appropriate sentence, of course I do consider those factors that I have just listed, as well as all the information contained in the sentencing memorandum filed by the defendant.

It is my determination, and while I certainly do appreciate the argument that has been made for a longer sentence, it's my determination that a sentence for all counts, with the exception of Count 6, which would total -- and specifically Count 1, which would total 320 months, would be sufficient but not greater than necessary to meet all of the factors listed in the statute. And then the Court would then add 60 months to that period to produce a total term of incarceration of 380 months.

I certainly do understand and recognize that that is a lengthy sentence. I do consider that in relation to the

defendant's specific medical issues as well as his age, but conclude that, for the reasons that I have outlined, it is an appropriate sentence in this case.

Now, of course, sentences do include more than just periods of incarceration, and the Court will include conditions of supervised release that, in the event the defendant serves his period of incarceration or for some reason were to be released early, either through action of the Executive Branch or otherwise, then I do believe that conditions of supervision are necessary and appropriate based upon the defendant's conduct and his history.

Now, with regard to the issue of a fine, while it's not been addressed by the parties, Section 5E1.2 of the sentencing guidelines does indicate in subsection (a) that the sentence imposed, together with a fine, should be sufficiently punitive.

In this particular case, the Court also considers the factors of subsection (d), those eight factors that are listed. But I do conclude that based upon the sentence that will be announced, specifically the term of incarceration, that it would not be necessary to impose a fine in this particular case for this defendant.

Of course I am mindful, as counsel indicates, that this defendant did have a significant sum of cash at the time of the search. But notwithstanding that fact, I do believe that the period of incarceration would be sufficiently punitive such

that the Court would not be -- it would not be necessary to impose a fine in this particular matter.

Let me see if I have addressed all of the arguments that have been raised by the parties that I do feel need to be addressed. I have addressed issues raised by counsel for the defendant, including issues of medical care. Again, the Court declines to impose a variance for the reasons that have been stated.

I also considered the arguments that have been made by the United States. With regard to the firearms, I'll also include in the judgment forfeiture of those items that were found in the residence, although I do recognize that perhaps some of those may have been stolen and may be returned to rightful owners. But they will be listed as being forfeited in the judgment in the case.

I will announce the sentence at this time.

It will be the sentence of the Court, pursuant to the Sentencing Reform Act of 1984, as modified by the decisions in *Booker* and *Fanfan*, and I do find the following sentence to be sufficient but not greater than necessary to meet all of the purposes of Title 18, Section 3553(a):

Therefore, it will be the judgment of the Court that the defendant, James Garfield Charles, will be committed to the custody of the Bureau of Prisons for a term of 320 months on each of Counts 1, 2 and 3, and 240 months on Count 4,

120 months on Count 7, with sentences on those Counts 1, 2, 3, 4 and 7 to all run concurrently.

There will also be a sentence of 60 months on Count 6 to run consecutively to the additional counts, to produce a total term of incarceration of 380 months.

Upon release, the defendant will be placed upon supervision for a term of five years on each of Counts 1, 2, 3 and 6, three years on Counts 4 and 7, all to run concurrently, for a total of five years.

Within 72 hours of release from the custody of the Bureau of Prisons, Mr. Charles must report in person to the probation office in the district in which he is released. While on supervision, he may not commit another federal, state or local crime, and must comply with the mandatory and standard conditions adopted by the Court and that will be set forth in the judgment and commitment order.

I will also include the following special conditions: They include that the defendant must abstain from the use of alcohol. That condition should be readily apparent based upon the defendant's activities and his condition at the time of arrest in this case.

He must also refrain from obstructing or attempting to obstruct or tamper in any fashion with the efficiency and accuracy of any prohibited substance testing which is required as a condition of release.

I'll also include a search condition. It is necessary in this particular case with this defendant based upon his actions and the items found in his residence at the time of arrest.

He will be required to submit his person, as well as any offices, properties, homes, residences, vehicles, storage units, papers or computers, as well as any other electronic communications or data storage devices or media to a search conducted by the probation officer.

Failure to submit to a search would be grounds for revocation of supervision, and the defendant must warn all occupants that his premises would be subject to a search according to this condition.

He may not purchase, possess, use, distribute or administer any controlled substance or paraphernalia relating to controlled substances except as prescribed by a physician.

Further, he may not use or consume marijuana products, even if that controlled substance were to be prescribed to him by a physician, licensed professional or other person.

And he must provide the probation office with access to any requested financial information.

While the Court is not imposing a fine in the case but will be imposing a special assessment, I do believe that the provision of financial information is necessary to ensure that the defendant does not re-engage in drug trafficking activities while on supervised release.

As stated, based upon the defendant's current financial situation, I will waive the fine requirement as well as the requirement for community restitution, but Mr. Charles will be ordered to pay a special assessment of $100 for each count of conviction, for a total of $600, and that will be due immediately.

As indicated, the defendant will be required to forfeit to the United States all assets that are listed in the forfeiture allegation of the indictment and the superceding indictment, that would include the following items:

First will be $24,490 in United States currency.

A Ruger Blackhawk .44 caliber pistol with the serial number listed.

A Walther P22, .22 caliber pistol also with the serial number listed.

A Ruger P97, .45 caliber pistol, the serial number listed.

A Taurus GD, 9-millimeter caliber pistol. Again, the serial numbers will be listed in the judgment.

A Palmetto Arms AR-15 rifle, including serial number.

A Drako AK-47 rifle with serial number.

A Smith & Wesson MP, .22 caliber pistol with the serial number listed.

A Glock 43, 9-millimeter caliber pistol with the serial number listed.

A Rossi .357 caliber revolver with serial number listed.

Glock 48, 9-millimeter caliber pistol with the serial number listed. Actually, there are two Glock 48s, 9-millimeter.

A Smith & Wesson SDVE, 9-millimeter caliber pistol with serial number.

An American Tactical AR-15 rifle with serial number being listed.

A Hi Point .45 caliber rifle with a serial number listed, as well as miscellaneous ammunition and magazines.

As indicated, I will recommend to the Bureau of Prisons that the BOP take into account the defendant's medical condition as outlined in the presentence investigation report and provide any additional treatment that may be necessary, including placement at a medical facility.

And the Court will also include in the judgment a recommendation that the BOP comply with Section 601 of the First Step Act with respect to placement of the defendant.

I will recommend that the medical issues be addressed primarily. Placement would be a secondary recommendation that will be listed in the judgment.

I'll also note for the record that while there is some indication of substance abuse in the presentence report, there is no indication of -- excuse me, substance use in the presentence report, there is no indication of addictions by this particular defendant, other than potential alcohol

addiction, and the BOP will be able to address that issue during the period of incarceration that has been announced. Therefore, I won't be making a recommendation with regard to specific treatment programs.

That will be the judgment of the Court. In just a moment, I'll ask the clerk to advise the defendant of his appellate rights.

Before I do so, I'll ask the attorneys to state any objections that they may have, first to the sentence that has been announced, and that would include the conditions of supervised release.

Second would be any objections under *United States versus Bostic*. Under that decision from the Sixth Circuit, any objections not previously raised should be stated at this time so that they may be addressed by the Court to be properly preserved for review on appeal.

I will note that the defendant's objections that were made and that were addressed previously do not have to be repeated, they are noted for the record, the objections that would affect the guideline calculations.

And then finally, if the parties would like the Court to make any additional findings, I would be happy to do so, if requested.

Mr. Bradbury.

MR. BRADBURY: Yes, Your Honor. The United States has no

objections and has no requests for the Court to make any additional findings.

THE COURT: All right. Thank you.

Mr. Sparks.

MR. SPARKS: Your Honor, we have no additional objections, other than those that have been previously raised with the Court, and we do not request any additional findings.

THE COURT: I'll note in the minute sheet from today's proceeding that those earlier objections are reserved for purposes of appeal.

Madam Clerk, if you would please advise Mr. Charles of his appellate rights.

THE CLERK: Yes, Your Honor.

(The form entitled "Court's Advice of Right to Appeal" was read aloud in open court by the clerk.)

THE COURT: Mr. Sparks, if you wouldn't mind, I'll ask you to pick up the acknowledgment of rights and review that with Mr. Charles.

Mr. Charles, after you have reviewed those acknowledgment of rights that were just read to you with your attorney, if you feel like you do understand those rights, please sign that original document. There is a copy that you can keep for your records.

MR. SPARKS: May I approach?

THE COURT: I'll also advise counsel that I'm adopting a

new procedure that 15 days after this proceeding, 15 days after this date, I will ask counsel for the defendant to file in the record a notice of review of the defendant's right of appeal. He has 14 days, of course, to decide whether to appeal.

To avoid any issues that may be raised under 2255, I'm asking counsel for the defendant to then file in the record a notice indicating that you have had that discussion with the defendant during this period of time, during this 14-day period of time. And then that will document the discussion has been held and hopefully avoid any issues at a later date.

I intend to start doing that in all sentencing proceedings, follow that procedure.

Are there any other issues that we need to take up in the case, Mr. Bradbury?

MR. BRADBURY: Nothing further. Thank you.

THE COURT: All right. Thank you.

Mr. Sparks, any other issues?

MR. SPARKS: No, sir.

THE COURT: All right. Thank you. I believe our next hearing is 11:00 this morning, we will be in recess until that time.

(Proceedings concluded at 9:45 a.m.)

C E R T I F I C A T E

I, Linda S. Mullen, RDR, CRR, do hereby certify that the foregoing is a correct transcript from the record of proceedings in this above-entitled matter.


/s/Linda S. Mullen          June 10, 2022
Linda S. Mullen, RDR, CRR   Date of Certification
Official Court Reporter